UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

October 24, 2017

LETTER TO COUNSEL

RE: *Jean R. Johnson v. Commissioner, Social Security Administration*
Civil No. SAG-16-4005

Dear Counsel:

On December 15, 2016, Plaintiff Jean R. Johnson petitioned this Court to review the Social Security Administration's final decision to deny her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (ECF No. 1). I have considered the parties' cross-motions for summary judgment. (ECF Nos. 15, 16). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). This Court must uphold the decision of the Agency if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny both motions, reverse the Commissioner's decision, and remand the case to the Commissioner for further consideration. This letter explains my rationale.

Ms. Johnson filed her claims for DIB and SSI on October 26, 2012 and November 6, 2012, respectively. (Tr. 298-99, 300-05). She alleged a disability onset date of April 28, 2011. *Id.* Her claims were denied initially and on reconsideration. (Tr. 227-244). A hearing was held on November 17, 2014, before an Administrative Law Judge ("ALJ"). (Tr. 153-190). Following the hearing, the ALJ determined that Ms. Johnson was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 8-25). Thereafter, Ms. Johnson requested that the Appeals Council review the ALJ's decision. (Tr. 26). The Appeals Council denied Ms. Johnson's request for review, so the ALJ's 2015 decision constitutes the final, reviewable decision of the Agency. (Tr. 1-7).

The ALJ found that Ms. Johnson suffered from the severe impairments of "Fibromyalgia, Pancreatitis, Hypothyroidism, Obesity, and Affective Disorder." (Tr. 13). Despite these impairments, the ALJ determined that Ms. Johnson retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can occasionally climb ramps and stairs, but she can never climb ladders, ropes or scaffolds, can occasionally balance, stoop, kneel, crouch, and crawl; and the claimant is limited to routine, repetitive, unskilled tasks and occasional interaction with supervisors.

(Tr.15). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. Johnson could perform jobs existing in significant numbers in the national economy, and that, therefore, she was not disabled. (Tr. 18-19).

Ms. Johnson raises two arguments on appeal: (1) that the ALJ erroneously assessed her RFC; and (2) that the ALJ failed to apply the proper legal standard in discrediting her credibility and subjective evidence of pain. [ECF No. 15-1, 3, 10]. These arguments are addressed below.

### I. Residual Functional Capacity ("RFC") Issue

Ms. Johnson argues that the ALJ erroneously assessed her RFC by: (a) failing to provide an adequate narrative discussion, [ECF No. 15-1, 5-8] (citing *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (stating that the RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations")); and (b) failing to include her moderate limitations with regard to "concentration, task persistence, or pace in his [RFC] assessment" in violation of *Mascio*. [ECF No. 15-1, 8-9]. I agree as to her second argument.

#### A. RFC Narrative Discussion

Social Security regulations require an ALJ to include "a narrative discussion of [the] claimant's symptoms and medical source opinions." *Thomas v. Comm'r, Soc. Sec.*, 2011 WL 6130605, at *4 (D. Md. Dec. 7, 2011). In doing so, an ALJ must "build an accurate and logical bridge from the evidence to his conclusion." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000), *as amended* (Dec. 13, 2000). With respect to physical RFC, "[e]xertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of seven strength demands: [s]itting, standing, walking, lifting, carrying, pushing, and pulling." SSR 96-8p, 1996 WL 374184, at *5. Meanwhile, nonexertional capacity considers limitations not dependent on an individual's physical strength including "postural (e.g., stooping, climbing), manipulative (e.g., reaching, handling), visual (seeing), communicative (hearing, speaking), and mental (e.g., understanding and remembering instructions and responding appropriately to supervision)[,]" activities. *Id.* at *6.

Here, the ALJ expressly considered Ms. Johnson's physical and mental abilities throughout his RFC analysis, pursuant to subsections (b) and (c) of 20 C.F.R. 404.1545. First, incorporating nonmedical evidence into his analysis, the ALJ considered Ms. Johnson's daily activities of: (1) having "no problem" completing personal care tasks; (2) driving three to four times a week; (3) shopping with her sister once or twice a month; (4) shopping for groceries once a month; (4) weeding and planting flowers; (5) putting dishes in the dishwasher; (6) sweeping and vacuuming; and (7) walking her dog daily. (Tr. 16). Second, the ALJ relied heavily on Ms. Johnson's medical records, which consistently: (1) "fail[ed] to establish limitations in range of motion, strength, sensation, etc.;" (2) documented "normal physical and respiratory examinations;" (3) revealed normal "pulmonary function[ing];" and (4) provided no indication of

"gross functional impairment." (Tr. 16-17). The evidence cited by the ALJ thus fully supports his finding that Ms. Johnson can perform "light work."

### B. *Mascio* Issue

Ms. Johnson next argues that the ALJ's opinion violates *Mascio v. Colvin*. [ECF No. 15-1, 8-9]. In *Mascio*, the United States Court of Appeals for the Fourth Circuit determined that remand was appropriate for three distinct reasons, including, as pertinent to this case, the inadequacy of the ALJ's evaluation of "moderate difficulties" in concentration, persistence, or pace. *Mascio*, 780 F.3d at 638. At step three of the sequential evaluation, the ALJ determines whether a claimant's impairments meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Listings 12.00 et. seq., pertain to mental impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00. The relevant listings therein consist of: (1) a brief statement describing a subject disorder; (2) "paragraph A criteria," which consists of a set of medical findings; and (3) "paragraph B criteria," which consists of a set of impairment-related functional limitations. *Id*. at § 12.00(A). If both the paragraph A criteria and the paragraph B criteria are satisfied, the ALJ will determine that the claimant meets the listed impairment. *Id*.

Paragraph B consists of four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. The ALJ employs the "special technique" to rate a claimant's degree of limitation in each area, based on the extent to which the claimant's impairment "interferes with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § 404.1620a(c)(2). The ALJ uses a five-point scale to rate a claimant's degree of limitation in the first three areas: none, mild, moderate, marked, or extreme. *Id*. at § 404.1620a(c)(4). In order to satisfy paragraph B, a claimant must exhibit either "marked" limitations in two of the first three areas, or "marked" limitation in one of the first three areas with repeated episodes of decompensation. *See*, *e.g.*, 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.02. Marked limitations "may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [the claimant's] ability to function." *Id*. at § 12.00(C).

The functional area of "concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." *Id*. at § 12.00(C)(3). Social Security regulations do not define limitations in concentration, persistence, or pace "by a specific number of tasks that [a claimant is] unable to complete." *Id*. Further, the regulations offer little guidance on the meaning of "moderate" limitations.

The Fourth Circuit remanded *Mascio* because the hypothetical the ALJ posed to the VE – and the corresponding RFC assessment – did not include any mental limitations other than unskilled work, despite the fact that, at step three of the sequential evaluation, the ALJ determined that the claimant had moderate difficulties in maintaining concentration, persistence, or pace. *Mascio*, 780 F.3d at 637-38. The Fourth Circuit specifically held that it "agree[s] with other circuits that an ALJ does not account for a claimant's limitations in concentration,

persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." *Id*. at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)) (internal quotation marks omitted). In so holding, the Fourth Circuit emphasized the distinction between the ability to perform simple tasks and the ability to stay on task, stating that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id*. Although the Fourth Circuit noted that the ALJ's error might have been cured by an explanation as to why the claimant's moderate difficulties in concentration, persistence, or pace did not translate into a limitation in the claimant's RFC, it held that absent such an explanation, remand was necessary. *Id*.

In this case, the ALJ concluded at step three of the sequential process that Ms. Johnson had moderate difficulties with respect to concentration, persistence, or pace. (Tr. 14). The ALJ then found that Ms. Johnson had "the [RFC] to perform light work … except the claimant is limited to routine repetitive, unskilled tasks and occasional interaction with supervisors." (Tr. 15). As Defendant concedes, however, a "discrepancy [exists] between the ALJ's finding at step three concerning [Ms. Johnson's] limitation in concentration, persistence, and pace, and his RFC assessment." [ECF No. 16-1, 6]. The ALJ failed to discuss Ms. Johnson's moderate difficulties in concentration, persistence, or pace within his RFC analysis. (Tr. 15-17).

Pursuant to *Mascio*, I find that remand is required because the ALJ failed to provide adequate explanation of how Ms. Johnson's RFC assessment accounts for her "moderate difficulties" in concentration, persistence, or pace or, alternatively, because he failed to explain why her moderate difficulties at step three of the sequential process did not translate into a limitation in her RFC. Urging against remand, Defendant relies upon *Jenkins v. Colvin*, 2016 WL 4373701 (W.D.N.C. Aug. 12, 2016). [ECF No. 16-1, 10].[1] Defendant contends that, pursuant to *Jenkins*, the ALJ's consideration of a plaintiff's medical records and individual statements within an RFC discussion can alone "indicate that moderate limitations in concentration, persistence, or pace, did not translate into the Claimant's RFC." *Id*. In *Jenkins*, however, the ALJ's RFC analysis made it clear that "she considered Plaintiff's ability to 'stay on task,' which the *Mascio* court distinguished from the ability to perform simple tasks." *Jenkins*, 2016 WL 4373701 at *6. For example, while the *Jenkins* ALJ conceded that the "[o]verall evidence in the file shows that claimant does have [mental] impairments," she found that it "does not document any listing level of impairment and none that would preclude her from all work." *Id*. Instead, the *Jenkins* ALJ found that the evidence, despite her mental impairments, "indicate[d] that the claimant has the mental capacity to perform simple, routine . . . low-stress work." *Id*. As such, *Jenkins* complied with *Mascio* because the ALJ demonstrated that the plaintiff's limitations in concentration, persistence, or pace did not affect her ability to work and thus need not have impacted her RFC. Here, I am without any such express statements from the ALJ. Additionally, this is not a case like *Jackson v. Colvin*, BPG-15-3040, at *2 (D. Md. Aug. 11, 2016) in which the ALJ drew a distinction between a claimant's ability to sustain simple work and the claimant's ability to

---

[1] For the second time in recent memory, the Commissioner also provided an incomplete Westlaw citation to another case, *Jackson v. Comm'r, Soc. Sec. Admin.* [ECF No. 16-1, 10]. Although I was able to find this case in our Court's docket, because it does not appear in Westlaw, the Commissioner either needs to correct her citation or refrain from including this case in future briefing.

sustain complex tasks. In light of the inadequate RFC analysis regarding Ms. Johnson's mental impairments, I must remand the case to the Commissioner for further analysis consistent with the Fourth Circuit's mandate in *Mascio*. On remand, the ALJ should provide adequate explanation of how Ms. Johnson's RFC assessment accounts for her "moderate difficulties" in concentration, persistence, or pace or, alternatively, why her moderate difficulties at step three of the sequential process do not translate into a limitation in her RFC.[2]

## II. The ALJ's Credibility Finding

Ms. Johnson next argues that the ALJ, in finding her "not entirely credible," erred by "fail[ing] to provide any assessment of which of [her] statements he found to be credible, and which he did not." [ECF No. 15-1, 10]. Specifically, Ms. Johnson relies on *Hammond v. Hecker*, 765 F.2d 424, 426 (4th Cir. 1985); *Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017); and *Bostrom v. Colvin*, 134 F. Supp. 3d 952, 960 (D. Md. 2016), which require the ALJ to "refer specifically to the evidence informing the ALJ's decisions" in making a credibility determination and to "articulate which of a claimant's individual statements are credible, rather than" analyzing whether a claimant is credible "as a general matter." [ECF No. 15-1, 10].

As background, in *Lewis*, the United States Court of Appeals for the Fourth Circuit determined that remand was required, in part, because "[t]he ALJ's decision applied an improper legal standard to discredit [the claimant's] [credibility]." *Lewis*, 858 F.3d at 870. Specifically, the Fourth Circuit held that the ALJ improperly discounted the claimant's subjective complaints "based solely on the lack of objective evidence" supporting the claimant's assertions. *Id.* at 866. Social Security regulations do not permit an ALJ to "reject [a claimant's] statements about the intensity and persistence of [] pain or other symptoms or about the effect [those] symptoms have on [a claimant's] ability to work *solely* because the available objective medical evidence does not substantiate [his or her] statements." *Id.* (citing 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2)) (emphasis added); *see* SSR 96-7p, 1996 WL 374186, at *1 ("An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence."). Rather, the Fourth Circuit emphasized that the ALJ failed to "explain in his decision what statements by [the claimant] undercut [the] subjective evidence…as limiting [the claimant's] functional capacity." *Lewis*, 858 F.3d at 866. Accordingly, the *Lewis* Court remanded because the ALJ failed to cite sufficient evidence of the claimant's own statements to discredit her credibility. Likewise, Ms. Johnson contends that the ALJ "failed to identify any statements [she] made . . . that he found to be . . . not credible." [ECF No. 15-1, 11].

The Commissioner, meanwhile, contends that "the discussion in *Lewis* relating to the evaluation of a claimant's subjective statements represents no change in existing law." [ECF No. 16-1, 11]. In other words, *Lewis* does not necessarily require an ALJ to support an adverse credibility finding with evidence of a claimant's subjective statements – "[s]uch a ruling would

---

[2] Although not argued by Ms. Johnson and not a basis for remand, I note that the ALJ's discussion of Ms. Johnson's fibromyalgia-related symptoms is sparse and may not fully comply with SSR 12–2p.

exclude consideration of many categories of evidence that 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), deem relevant in evaluating a claimant's subjective complaints." [ECF No. 16-1, 12]. Instead, the Commissioner argues that other supporting record evidence, such as symptom-related limitations imposed by doctors, having a "history of conservative treatment and non-compliance with treatment," evidence of a claimant's daily activities, and efforts to work, together with the objective medical evidence, independently satisfies the Fourth Circuit's mandate in *Lewis*. *Id.* at 12-13 (arguing that "*Lewis* has no bearing on this case because the ALJ identified proper rationale in support of the credibility finding, including [plaintiff's] objective medical evidence and [] reported daily activities.").

I disagree that the ALJ erred in finding that Ms. Johnson was "not entirely credible." (Tr. 16). The scope of the *Lewis* ruling need not be determined in the instant case because the ALJ, in discounting Ms. Johnson's credibility, expressly cited sufficient evidence of her own statements that were inconsistent with her allegations of symptoms. For example, the ALJ noted that Ms. Johnson, in a September, 2012 follow-up appointment for her alleged impairments, stated that she "had no complaints and felt quite well." (Tr. 16). Further, the ALJ noted Ms. Johnson's admission that she "has no problem with personal care tasks" and will "pull[] weeds and plant flowers, put dishes in the dishwasher, sweep[], vacuum[]," drive weekly, and shop for groceries. (Tr. 16). Thus, the ALJ adequately "explain[ed] in [his] decision what statements by [Ms. Johnson] undercut [the] subjective evidence…as limiting [her] functional capacity." *Lewis*, 858 F.3d at 866. Moreover, the ALJ provided substantial objective record evidence to support his conclusion. *See* (Tr. 14-19); *see also* SSR 96-7p, 1996 WL 374186, at *6 (noting that "the absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms is [] one factor that the adjudicator must consider in assessing an individual's credibility."); *see Hines v. Barnhart*, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (citation omitted). Accordingly, the ALJ, by considering Ms. Johnson's "objective medical evidence, . . . daily activities, . . . [and subjective] description[s] of pain," properly assessed her credibility. *Bostic*, 474 F. App'x at 954. Remand on this basis is therefore unwarranted.

### III.   Conclusion

For the reasons set forth above, Ms. Johnson's Motion for Summary Judgment (ECF No. 15] is DENIED and Defendant's Motion for Summary Judgment (ECF No. 16) is DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's judgment is REVERSED IN PART due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The Clerk is directed to CLOSE this case.

      Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

                            Sincerely yours,

                            /s/

                          Stephanie A. Gallagher
                          United States Magistrate Judge